**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| **THE MCHENRY MANAGEMENT GROUP, INC.,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | )      **No. 2:25-cv-54** ) |
| **ACE AMERICAN INSURANCE COMPANY D/B/A CHUBB INSURANCE COMPANY.** | ) ) ) ) |
| **Defendant.** | ) ) |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION**
**TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant, ACE American Insurance Company ("ACE")[1], states the following in support of its motion to dismiss the Complaint filed by The McHenry Management Group, Inc. ("TMMG"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.    STATEMENT OF THE CASE**

This case arises from the claim for death benefits under the Defense Base Act ("DBA") filed with the U.S. Department of Labor by Mrs. Duvall following the death of her husband, a U.S. citizen, while working on a U.S. Navy vessel in a shipyard in Croatia (the "Duvall claim"). A central issue in the proceedings before the Administrative Law Judge ("ALJ") who tried the case arising from his death was whether ACE owed insurance coverage to TMMG, under a DBA workers compensation insurance policy issued by ACE (the "DBA Policy"), for the death benefits

---

[1] The defendant, ACE American Insurance Company, does not operate under the fictitious name mentioned in the case caption of the Complaint. However, "Chubb" (not "Chubb Insurance Company") is a trade name used by ACE American Insurance Company. For the purpose of this briefing, we will refer to ACE American Insurance Company simply as "ACE." It is important to note that there may be some confusion when discussing the administrative record, as both parties and the Administrative Law Judge (ALJ) referred to ACE American Insurance Company as "Chubb." In this context, any reference to "Chubb" pertains to ACE American Insurance Company and is used solely to maintain consistency with the terminology employed in the agency proceedings.

sought by Mrs. Duvall. The ALJ found TMMG is liable to Mrs. Duvall for past-due death benefits plus interest, funeral benefits, and ongoing death benefits for the remainder of her widowhood. *See* Compl. ¶ 61; ALJ Order[2] at 25-26, **Exh. A** hereto.[3] The ALJ also determined there was no coverage owed by ACE under the DBA Policy, and that issue is now squarely on appeal before the Benefits Review Board at the U.S. Department of Labor ("BRB"). In an attempt to sidestep this ruling, TMMG filed its Complaint against ACE in the Circuit Court for the City of Chesapeake, Virginia, for breach of the DBA Policy and for breach of the duty of good faith and fair dealing. ACE thereafter removed the matter to this Court under its diversity jurisdiction, and ACE now seeks dismissal of the Complaint.

Quite simply, this Court, sitting in diversity and applying Virginia law, cannot provide the relief sought by TMMG. The central issue presented by the Complaint is whether coverage for the Duvall claim is owed to TMMG under the DBA Policy issued to it by ACE. This is the very same issue answered in the negative by the ALJ, and it is the very same issue which is the subject of an appeal by TMMG's counsel and other parties to the BRB. There is no authority known to us, however, whereby a court in the Commonwealth of Virginia can use the common law of Virginia to overrule the decisions of a federal administrative agency.

Congress has legislated broadly in the field of providing workers' compensation benefits to workers operating in the federal arena, with the Longshore and Harbor Worker's Compensation Act ("LHWCA") and the DBA (which incorporates the LHWCA) being pertinent here. In such

---

[2] ALJ Kultgen's October 13, 2023 Decision and Order on Remand Awarding Death Benefits ("ALJ Order" or "Order") is referenced in the Complaint and integral to it. Compl. ¶¶ 55-58, 61. TMMG's compensatory damages claim is based on the amount of death benefits awarded in this Order. Further, agency proceedings are properly the subject of judicial notice. *See Riley v. City of Richmond*, No. C-13-4752 MMC, 2016 WL 1161450, at *2, n. 4 (N.D. Cal. Mar. 23, 2016) (citing *Clark v. Yosemite Community College Dist.*, 785 F.2d 781, 785-88 (9th Cir. 1986)).

[3] The ALJ's Order does not include calculations for these amounts but directs those calculations. Order, at 26. TMMG alleges the past-due death benefits amount to $557,106.22, and future death benefits are $2,838.82 bi-weekly, which are estimated to be at least $1,476,186.40. Compl. ¶ 61.

circumstances, federal preemption applies and there is no power to render the relief sought under Virginia law. TMMG's posture in the Complaint attempts to maneuver around the federal agency's determination without directly attacking it, but the law simply does not allow such attempts to avoid federal preemption. As such, the Complaint must be dismissed for failure to state a claim for which relief may be granted.

That dismissal is warranted here makes intuitive sense. TMMG seeks to sidestep a federal agency's administrative and judicial review process on a question already decided and go straight to a new forum—the very essence of forum shopping.

In addition to federal preemption, dismissal is proper because TMMG is collaterally estopped from raising the same issue on which it previously lost before a new and different tribunal. Issue preclusion, or collateral estoppel—a species of *res judicata*—precludes relitigating an issue previously decided by a court or agency. To be clear, the same issue, whether there is coverage under TMMG's DBA Policy, was previously decided by an administrative law judge in a federal proceeding and is now squarely before the Court on the Complaint. Since a finding on the issue of coverage forms a condition precedent for all relief sought by TMMG with this Court, the Complaint must fail in its entirety. To state a claim for damages for bad faith claims handling under Virginia law (which allegations form part of Count One and all of Count Two of the Complaint), TMMG must prove the DBA Policy covered the Duvall Claim—something TMMG is collaterally estopped from doing. As such, the Complaint must be dismissed because TMMG cannot state a claim for relief under these circumstances. Finally, setting aside all other reasons for dismissal, Count Two should be dismissed because Virginia law does not recognize a separate cause of action for the breach of the implied warranty of good faith and fair dealing.

3

## II. PROCEDURAL HISTORY BEFORE DEPARTMENT OF LABOR

***The DBA Claim.*** The Complaint, and documents and materials such as ALJ proceedings and rulings which are properly considered on Rule 12(b)(6) motions, set forth much of the history of the dispute between TMMG and ACE. Kimberly Duvall, the widow of a deceased worker, filed a claim for death benefits under the Defense Base Act against her husband's direct employer, Mi-Tech, Inc. ("Mi-Tech"), with the DOL's Office of Workers' Compensation Programs ("OWCP"). *See* Compl. ¶ 25; ALJ Order at 3 (**Exh. A).** Mr. Duvall died of a heart attack in 2017 while working on a United States vessel, the USS *Mt. Whitney*, at a shipyard in Croatia. Compl. ¶ 24; ALJ Order at 3. Mrs. Duvall later amended her claim to add TMMG, after learning Mi-Tech did not have DBA coverage. Compl. ¶¶ 26, 40; ALJ Order at 3. TMMG had a contract with the Croation shipyard to provide the services of Mi-Tech employee, Mr. Duvall. Compl. ¶ 19. TMMG and Mi-Tech had a contract by which Mi-Tech would provide Mr. Duvall's services for specified work at the Croation shipyard. Compl. ¶ 20.

ACE provided a defense to TMMG for the Duvall Claim under a reservation of rights, informing TMMG of same by letter dated March 20, 2019. *See* Compl. ¶¶ 29, 30, & Exh. 4 (Letter). ACE's reservation of rights letter discusses the scope of the DBA Policy, specifically noting the Policy only applies to matters "in the Schedule set forth on the DBA Coverage Endorsement." Compl. Exh. 4 at 1. TMMG alleges the defense lawyer ACE hired did not competently and loyally defend TMMG, ACE did not inform TMMG the defense lawyer also represented ACE in the proceedings, and ACE should have retained separate counsel for ACE, who was also named as a defendant in the claim as a potential responsible carrier. Compl. ¶¶ 34-39, 41-48, 53-55, 60, 66-69, 81-86, 92. None of these alleged facts, however, are relevant to the issue of coverage.

On April 26, 2021, ALJ Larry W. Price ruled that Mr. Duvall's death was not covered by the DBA because the work on the *Mt. Whitney* was not a "public work" project under the DBA. Compl. ¶ 49; ALJ Order at 3. On appeal, the Benefits Review Board ("BRB") reversed the ALJ's decision, finding Duvall's work *was* covered by the DBA, and remanded. Compl. ¶ 52.

Litigation at the DOL ensued before a new ALJ, ALJ Pamela A. Kultgen. ALJ Kultgen issued a Decision and Order on Remand Awarding Death Benefits ("Order") on October 13, 2023, finding decedent's injury was covered by the DBA, assessing death benefits, assessing TMMG as the statutory employer upon finding TMMG and Mi-Tech were in a contractor-subcontractor relationship, finding Mi-Tech and TMMG jointly and severally liable for benefits, and, importantly, finding the DBA policy did not cover Mr. Duvall's work. *See generally,* ALJ Order (**Exh. A**); *see also* Compl. ¶¶ 57, 58, 61. The ALJ's Order noted the issue before her: "This case presents a dispute as to whether TMMG's Defense Base Act insurance policy with Chubb covers decedent's work on the USS *Mt. Whitney*." ALJ Order at 19. The ALJ resolved this dispute ("I find and conclude that it does not") and stated her reasons for her findings. *Id.* The ALJ considered (and quoted in the Order) extensive DBA Policy language from the "General Section," a "Defense Base Act Contract and/or Project Endorsement page," and a "Schedule" referenced in the DBA endorsement. *Id.* at 19-21. The ALJ then interpreted these various terms of the Policy, applied her interpretation of the language of the Policy to the undisputed facts and circumstances to conclude the Policy did not apply to the work Duvall was performing. *See id.*

ACE continued to provide TMMG a defense in the proceedings before the ALJ from the beginning and without interruption. Following the ruling by the ALJ, however, on November 1,

2023, ACE issued a denial of coverage for the Duvall Claim. *See* Denial Letter, Exh. 5 to the Compl. This letter quoted ALJ Kultgen's Order finding that the decedent's work fell outside the scope of the DBA Policy.

***TMMG's Appeal in the DBA Claim.*** TMMG, by the same counsel who also filed the present Complaint, appealed the ALJ's Order to the BRB. *See* TMMG App. Br. (12/15/23), with Exhibits, **Exh. B** hereto.[5] On appeal, TMMG argued extensively that the DBA Policy covered Duvall's work. TMMG App. Br. at 8-14. TMMG did not dispute, however, the underlying facts the ALJ relied on to find there was no coverage under the ACE policy. Instead, TMMG offered arguments, not that the facts were wrong, but that the ALJ misinterpreted or misapplied the policy language. *Id.* at 10-12-14. 12-14. *See generally* TMMG App. Br. (**Exh. B**).

ACE has opposed TMMG's appeal, relying on the language of the DBA Policy to argue ALJ Kultgen correctly found no coverage for the Duvall Claim. *See* ACE App. Br. (2/7/24), **Exh. C** hereto. A concise summary of the various filings to the BRB on appeal of the Order is recounted in an interim order of the BRB. *See* BRB Order (8/29/24), **Exh. D** hereto. Agency proceedings reflect that the Duvall Claim appeal remains pending.

***Current Court Actions by TMMG.*** On March 19, 2024, TMMG filed the present Complaint in Chesapeake Circuit Court. After receipt of the Complaint and summons on December 30, 2024, ACE filed a notice of removal with this Court on January 28, 2025.

## III. LEGAL STANDARD

Under Rule 12(b)(6), parties can assert by motion the defense of failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

---

[5] This appeal is referenced in the Complaint, Compl. ¶ 74, and the agency proceedings are properly the subject of judicial notice.

*v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, and a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (citation omitted). Although the truth of the facts alleged is presumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Moreover, courts are not always limited to the four corners of the complaint on a Rule 12(b)(6) assessment. Rather, courts may also consider limited categories of documents outside the complaint without converting the motion into one for summary judgment: (1) documents, that are both integral to the complaint and authentic, that are attached to the complaint or to the motion to dismiss; (2) documents that are "explicitly incorporated into the complaint by reference" but not attached as exhibits; and (3) matters of public record and/or which are properly taken on judicial notice. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Kerr v. Marshall Univ. Bd. of Governors,* 824 F.3d 62, 68 (4th Cir. 2016); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *Philips v. Pitt Co. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (noting it was proper during Rule 12(b)(6) review to consider "publicly available [statistics] on the official redistricting website of the Virginia Division of Legislative Services."); *Colonial Penn Ins. Co. v. Coil,* 887 F.2d 1236, 1239-40 (4th Cir. 1989) (finding judicial notice may be taken of court records in related proceedings). The

Fourth Circuit has e v e n extended this reasoning to situations where the court itself may identify extrinsic materials without converting a motion to dismiss to one for summary judgment. *See Kerr*, 824 F.3d at 68. Further, under Rule 201, administrative agency records, including decisional documents, are subject to judicial notice. *See* Fed. R. Evid. 201(b)(2). Judicial notice establishes only that these documents are as they are; it does not establish the correctness of any determinations therein. *See Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 435 (9th Cir. 1992) (taking judicial notice of the existence of a state administrative agency's published decisions); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.") (internal quotation omitted)). Moreover, statements made by a party in his pleadings constitute judicial admissions and are binding on the party.

Claims that are collaterally estopped may be dismissed on a Rule 12(b)(6) motion if the defense can be judged on the face of the complaint and documents which may be properly considered on Rule 12(b)(6) motions. *See, e.g., Sweeney v. Buttigieg*, No. 21-cv-0204, 2022 WL 1159698, *2 (E.D. Va. Apr. 18, 2022) ; *Trump v. American Broad. Cos., Inc.*, __ F. Supp. 3d __, 2024 WL 3519177, *3 (S.D. Fla. July 24, 2024) (slip opinion).

## IV.  ARGUMENT

### A. UNDER VIRGINIA LAW, THERE IS NO POWER TO RENDER AN ORDER FOR THE RELIEF TMMG SEEKS BECAUSE THE ISSUE IS PREEMPTED BY FEDERAL LAW.

Under Virginia's well-established "power to render" doctrine, Virginia law does not authorize relief on TMMG's Complaint because the question presented is preempted by federal

law and the federal agency proceedings which are currently pending. *See A.A. v. J.M.*, 81 Va. App. 213, 235, 903 S.E.2d 513, 524-25 (Va. Ct. App. 2024) (noting the Virginia appellate courts "have repeatedly applied this doctrine" and citing cases). Virginia has long recognized that "even when a court has subject-matter jurisdiction, an order is *void ab initio* if "the character of the judgment was not such as the court has the power to render, or because the mode of procedure employed by the court was such as it might not lawfully adopt." *Id.* (quoting *Anthony v. Kasey*, 83 Va. 338, 340, 5 S.E. 176 (1887)). The power to render inquiry requires that Virginia courts must act within the scope of their derived power, from the state Constitution, the General Assembly, and grants of power from the federal government. *Yourko v. Yourko*, 74 Va. App. 80, 99, 866 S.E. 2d 588, 598-99 (Va. Ct. App. 2021), *rev'd on other grounds*, 302 Va. 149, 884 S.E.2d 799 (2023). An order that is *void ab initio* is a "complete nullity." *A.A.*, 81 Va. at 235, 903 S.E.2d at 524 (quoting *Singh v. Mooney*, 261 Va. 48, 52, 541 S.E.2d 549 (2001)). Under Virginia law, challenges to the power to render, like those to subject matter jurisdiction, can be raised anytime or *sua sponte*. *Id.* at 239, 903 S.E.2d at 526.

Federal preemption is one basis for which Virginia courts, under Virginia law, lack the power to render. *Yourko*, 74 Va. App. at 100, 866 S.E.2d at 598. As the Virginia Court of Appeals has explained:

> When a state's action conflicts with federal action in an area within the federal government's power, the state's action "must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617, 131 S. Ct. 2567, 2577, 180 L. Ed. 2d 580 (2011); *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 120 S. Ct. 2288, 2294, 147 L. Ed. 2d 352 (2000) ("[S]tate law is naturally preempted to the extent of any conflict with a federal statute."). This notion is embodied in the Federal Constitution's Supremacy Clause. U.S. Const. art. VI, cl. 2 ("This Constitution, and the laws of the United States ... shall be the supreme law of the land; and the judges in every state will be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."). Just as a state court's action is void if it exceeds the power conferred by Virginia statutes, so too is a state court's action void if it exceeds the limits imposed on it by the federal government because it

> "transcend[s] the power conferred by law." *See Windsor v. McVeigh,* 93 U.S. 274, 282, 23 L. Ed. 914 (1876), *cited with approval* by *Kasey*, 83 Va. at 340, 5 S.E. 176.

*Id.* at 99-100, 866 S.E.2d at 598. In areas in which federal preemption exists, Virginia courts are not allowed to "maneuver around" it by issuing orders that sidestep the federal bar but nonetheless undermine it. For example, Congress passed a statute, the Uniformed Services Former Spouses Protection Act ("USFSPA"), which set forth conditions under which state courts could divide military service benefits. *See id.* at 92, 866 S.E.2d at 594. When a Virginia court entered a divorce decree that attempted to work around the federal statute by requiring the husband to *indemnify* the wife a portion of his retirement pay that the USFSPA declared was off-limits to state court division (rather than a direct decree allocating that pay), the Virginia Court of Appeals rejected this attempt to circumvent federal preemption. The Court of Appeals found that the divorce decree was *void ab initio* because federal preemption meant the court had no power to render the decree. *Id.* at 100-101, 866 S.E.2d at 598-99.

It is well-established that the area of federal workers' compensation benefits is preempted by Congress. "A preemption analysis must begin with the federal law itself." *Kinsey v. Virginia Elec. and Power Co.*, 300 Va. 124, 131, 861 S.E.2d 59, 63-64 (Va. 2021). The Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950, creates a broad remedial workers' compensation scheme. With the passage of the Defense Base Act ("DBA"), 42 U.S.C. §§ 1651-1655, Congress extended the protections of the LHWCA, in relevant part, to overseas workers injured while working on, among other things, United States public works projects. "The DBA establishes a uniform, federal compensation scheme for civilian contractors and their employees for injuries [or death] sustained while providing functions under contracts with the United States outside its borders." *Fisher v. Haliburton*, 667 F.3d 602, 610 (5th Cir. 2012). Both the employer and the insurance carrier are parties to any claim for benefits brought under the DBA,

and, just like claims for LHWCA benefits, questions of insurance coverage are resolved in administrative proceedings brought under the DBA. The DBA is administered by the United States Department of Labor ("DOL"), in the administrative Office of Worker's Compensation Programs, subject to hearing and decision in contested cases by the Office of Administrative Law Judges ("OALJ") in the DOL, and administrative appeal to the Benefits Review Board. 33 U.S.C. §§ 919, 921(b)(3). Once a party to a DBA or LHWCA claim has exhausted these procedures, he or she may appeal to the courts of appeals for the circuit in which the injury occurred for LHWCA claims, *see* 33 U.S.C. § 921(a)(5*), or, for DBA claims, to the district court where lies the office of the appropriate district director, *see* 42 U.S.C. § 1653(b)*. As with any order of a district court, a decision reviewing a DBA order can be appealed to the circuit court in which that district court sits. *See generally,* 28 U.S.C. § 1294. Thus, a party before the DOL on a DBA claim, aggrieved by an ALJ's decision made in a DBA compensation order, has one layer of administrative review, and two layers of judicial review, *of right*. Discretionary review is available, also, to the Supreme Court. *See AFIA/CIGNA Worldwide v. Felkner*, 930 F.2d 1111, 1116 (5th Cir. 1991) (discussing review scheme under the DBA). TMMG and ACE are *currently parties* to the BRB appeal of the Duvall Claim on the question of coverage under the DBA Policy. *See* Proc. Hist., *supra,* and citations thereto.

The LHWCA vests jurisdiction in the DOL, and ALJs of the DOL, over "a claim for compensation." 33 U.S.C. §§ 919(a); 919(d). ALJs have "full power and authority to hear and determine all questions *in respect of such claim." Id.* (emphasis added). An insurance carrier that provides compensation under the LHWCA or DBA becomes bound for the employer's full obligation of compensation. 33 U.S.C. § 935; 20 C.F.R. § 703.115. Thus, Congress expressly authorized ALJs to decide who is the responsible insurance carrier to pay compensation benefits.

11

In identifying the proper carrier, ALJs often must adjudicate insurance contract coverage disputes—even though state law covers such insurance contracts—when necessary to resolve claims for compensation benefits. *See, e.g., Weber v. S.C. Loveland Co.,* 35 BRBS 75, 79-81, 2001 WL 618456 at *5 (DOL Ben. Rev. Bd. May 17, 2001); *Barnes v. Alabama Dry Dock and Shipbuilding Corp.*, 27 BRBS 188, 1993 WL 404281, at * 3, n. 2 (DOL Ben. Rev. Bd. Sept. 27, 1993) (noting ALJ had authority to and should have decided question of interpretation of insurance contract which was governed by state law as "[t]he administrative law judge has the power to hear and resolve insurance issues which are necessary to the resolution of a claim under the Act," and refusing request to certify state law insurance questions to the relevant state supreme court "as there is no authority under the Act for the Board to take such an action"); *see also* TMMG App. Br. (**Exh. B** hereto) at 8-9 (acknowledging that the ALJ "may adjudicate insurance disputes, even when those disputes require him/her to interpret state-created contract rights") (citing cases).

It is well-settled that the LHWCA preempts numerous types of state law claims brought by actual or would-be claimants for benefits or other relief against employers and insurance carriers. *See e.g., Nadheer v. Ins. Co. of Pennsylvania*, 506 Fed. App'x 297 (5th Cir. 2013) (finding claims for breach of insurance contract and bad faith against carrier are preempted by the DBA); *Harty v. Continental Ins. Co.*, No. 13-cv-2545, 2013 WL 6406908, *3 (N.D. Cal. Dec. 6, 2013) (holding DBA preempts claims for breach of insurance contracts to provide benefits under the DBA); *Nauert v. ACE Prop. And Cas. Ins. Co.*, No. 104cv02547, 2005 WL 2085544, *2-5 (D. Col. Aug. 27, 2005). That same reasoning applies to the claims TMMG seeks to bring here. As the Fifth Circuit has explained:

> Federal law will also preempt state law if the sheer comprehensiveness of the federal regulatory scheme warrants the inference of congressional intent to preempt. The LHWCA, born of much judicial travail and contention among the states, Congress, and the Supreme Court, was established as a uniform national

program of workers compensation benefits for longshore and harbor workers which could not be constitutionally provided by the States. The program is administered by the Secretary of Labor through the Director of Office of Workers' Compensation Programs. 33 U.S.C. § 939. It is routinely handled by regional Deputy Commissioners, who no longer have any adjudicative duties or powers. Controverted cases are now heard by an ALJ. Appeals of compensation orders are handled first by a review board in the Department of Labor, 33 U.S.C. § 921, and then by federal courts of appeals, 33 U.S.C. § 921(c). Unlike their former role as the first step in appellate review, federal district courts now are confined to enforcing compensation orders. 33 U.S.C. §§ 918, 921(d). Unlike many workers compensation acts that require repeated court enforcement, the LHWCA is almost self-executing, self-policing.

Thus, of great significance for this case, the LHWCA provides for automatic payment of benefits, and further provides for express penalties for an employer's failure to pay benefits. 33 U.S.C. §§ 914, 938. Under the authority of the LHWCA, the Secretary of Labor has promulgated a detailed set of regulations implementing all portions of the Act. *See* 20 C.F.R. §§ 701–704 (1980). Portions of these regulations are directed specifically toward carriers that issue LHWCA insurance. *See* 20 C.F.R. §§ 703.101–703.503 (1980). *In a nutshell, it is difficult to imagine a more comprehensive scheme of federal regulation—one that leaves no room for state involvement—than that contained in the LHWCA.*

*Texas Employers' Ins. Ass'n v. Jackson*, 820 F.2d 1406, 1411–12 (5th Cir. 1987), *rev'd on other grounds on reh'g,* 862 F.2d 491 (5th Cir. 1988) (emphasis added) (finding LHWCA claimant's state tort claim against LHWCA insurer for bad faith insurance practices preempted by LHWCA). In light of the "carefully crafted and comprehensive statutory compensation scheme contained in the LHWCA," the preemptive effect of the LHWCA should be construed broadly. *Id.* (citing cases).

A finding of preemption is proper here because TMMG seeks—backhandedly—to upset the federal proceedings and the orderly administration of a Congressionally-created administrative review scheme. Though TMMG's Complaint does not make a head-on attack of the ALJ's ruling (as there would obviously be no authority to do so under state law), the Complaint seeks to avoid the ALJ's ruling and the agency review process. In direct contravention of the ALJ's finding in

the federal proceedings, TMMG's Complaint seeks an order under Virginia law that the DBA Policy covers the federal compensation benefits owed to Mrs. Duvall.

AJLs have plenary authority by federal statute to adjudicate all issues "in respect of a claim." 33 U.S.C. §§ 919(a); 919(d). The ALJ's Order here turns in large part on her finding lack of coverage under the DBA policy. Had she found coverage were owed under the policy, the ALJ would have ordered ACE to pay the full compensation benefits. *See* ALJ Order at 19-22. TMMG is appealing the ALJ's decision through the appropriate agency review process, to an administrative board, the BRB, created by Congress to hear appeals of ALJ decisions. Judicial review would be the next step should TMMG continue to be aggrieved and wish to appeal. Instead, TMMG asks a Virginia court (and by virtue of diversity jurisdiction, this Court which applies Virginia law), to find there is coverage under the DBA Policy. Following and assuming a finding of coverage, TMMG also seeks a remedy for bad faith claims handling and denial.

TMMG's present suit seeks to avoid and maneuver around the ALJ's finding of no coverage by jumping to a state forum. Under these circumstances, federal preemption must apply to prevent Virginia courts, and by virtue this Court applying Virginia law, from exercising the power to render the order TMMG seeks. This only makes sense—if TMMG were to prevail on its coverage claim in the Complaint, the resulting order would effectively overturn the determination of a federal administrative agency acting under authority of federal law. This result would subject ACE subject to two conflicting rulings—one that its DBA Policy does cover the Duvall Claim and it owes benefits to Mrs. Duvall, and a separate ruling that the policy provides no coverage and it owes no such benefits to Mrs. Duvall. ACE would be unable, essentially, to comply with both rulings. Thus, if TMMG succeeds in the present Complaint, ACE would be compelled to *reimburse* TMMG for benefits it has paid and continues to pay Mrs. Duvall (under the ALJ's Order), even

though the DOL has ruled that ACE has no obligation to do so. *Cf. Merck Sharp & Dohme Corp.*
*v. Albrecht*, 587 U.S. 299, 303 (2019) (noting federal preemption occurs when it is impossible for
a private party to comply with both state and federal requirements).

There can be no doubt that TMMG's Complaint seeks relief under Virginia law to
maneuver around the federal agency's Order by ordering *reimbursement of* DBA benefits paid
rather than *direct payment* of them to a claimant. As discussed above, Virginia courts have rejected
similar attempts to use Virginia law to circumvent federal law. The spouse in *Yourko* had sought
such a workaround—the federal statute prohibited state courts from including a certain aspect of
her ex-husband's military pay in the property division analysis, so she asked the state court to order
*reimbursement* of an amount equal to the "off-limits" military pay. The Virginia Court of Appeals
disagreed, finding federal preemption applied and the court lacked the power to render. *See*
*Yourko*, 74 Va. App. at 100-101, 866 S.E.2d at 598-99.

The relief TMMG seeks here would undermine federal authority and upset the system
carefully crafted by Congress and the DOL to provide workers' compensation benefits to workers
who are employed in an environment controlled by the federal government. Under these
circumstances, federal preemption must apply and there is no "power to render" a decision under
Virginia law. *Cf. Randoph v. Sheehy*, 76 Va. App. 356, 365 (Va. Ct. App. 2023) ("When a [state]
court issues an order without authority due to federal preemption, the order is void."). The same
result follows in this Court as it would in state court, given this Court is exercising diversity
jurisdiction. Preemption is called for here in particular because Virginia courts are wary of stepping
into areas where there is a proper federal forum. *See Sharbutt-Ridge v. Ridge*, Nos. 0736-97, 0870-
97-1, 1998 WL 74306, *3 (Va. Ct. App.  Feb. 24, 1998) (noting wife's remedy for arguing she

was overtaxed on her portion of ex-husband's federal retirement pay that she received as part of divorce agreement was to challenge the IRS "in the appropriate federal forum").

Moreover, though states typically regulate in the area of insurance, LHWCA (and DBA) preemption applies in cases involving insurance for LHWCA or DBA benefits. *Jackson*, 820 F.2d at 1414-15 (finding the LHWCA "specifically relates to the business of insurance" and thus falls outside the area left to the exclusive regulation of the states). Numerous provisions of the LHWCA relate specifically to insurance carriers, and through § 35 of the Act, 33 U.S.C. § 935, the duties imposed upon employers are deemed imposed upon the insurers of employers. *See also* 20 C.F.R. § 703.115. The regulations implementing the LHWCA address at length the insurers' obligations under the Act. *See* 20 C.F.R. § 703.

Though federal court rulings regarding deference to agency proceedings and determinations are not controlling under Virginia law, it is fair to presume that Virginia courts would give weight to federal court rulings speaking on federal law and a federal statutory scheme. As such, it is helpful to consider how federal district courts would treat this question if it were presented to them under federal question jurisdiction rather than diversity. Quite simply, federal courts would decline to exercise federal question jurisdiction in deference to the federal agency proceedings. *See Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 185 (2023) ("We have several times held that the creation of such a review scheme for agency action divests district courts of their ordinary jurisdiction over the covered cases."); *Bohon v. Fed. Energy Regulatory Comm'n*, 92 F.4th 1121, 1123-24 (D.C. Cir. 2024) (affirming dismissal for failure to state a claim of property owners' challenge in district court to federal agency's determination that eminent domain was proper); *Soul Quest Church of Mother Earth, Inc. v. Attorney General, United States*, 92 F.4th 953, 971 (11th Cir. 2023) (declining to hear a claim made outside the federal agency review

16

process because it is inescapably intertwined with a review of the procedures and merits surrounding an agency's order and is an impermissible collateral challenge) (citations omitted).

**B. THE COMPLAINT FAILS TO STATE A CLAIM BECAUSE TMMG IS COLLATERALLY ESTOPPED FROM RAISING THE QUESTION OF COVERAGE UNDER THE DBA POLICY.**

**1. Collateral Estoppel Applies, Barring TMMG From Relitigating Coverage.**

"Collateral estoppel precludes relitigation of an issue decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." *In re McNallen,* 62 F.3d 619, 624 (4th Cir. 1995) (citing *Allen v. McCurry,* 449 U.S. 90, 96 (1980)).[6] Thus, "[c]ollateral estoppel forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." *Sedlack v. Braswell Servs. Group, Inc.,* 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks omitted). To apply collateral estoppel to an issue or fact, the proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party

---

[6] Federal law should apply to determine what preclusive effect to give to a decision of a federal agency, even though the agency decision was based on state contract law, as the decision was made in a federal forum and there is a need for a uniform federal rule. *Cf. Semtek Int'l v. Lockheed Martin,* 531 U.S. 497, 508 (2001) (holding that when a federal court exercises diversity jurisdiction over a state law claim, "federal common law governs the claim-preclusive effect of a dismissal" of the state law claim by the federal court); *Coyne v. Commonwealth,* 39 Va. App. 114, 117–18, 571 S.E.2d 297, 298 (2002) (finding Virginia law rather than federal law on collateral estoppel applied to decide preclusive effect of a *state* court judgment). To the extent there is any doubt, however, if Virginia law on collateral estoppel should apply, the choice of law makes no difference in the result because there is no material difference between the elements of federal collateral estoppel and Virginia collateral estoppel for our purposes. *See McNallen v. McNallen,* 62 F.3d 619, 624 (4th Cir. 1995) (noting district court's application of federal rather than Texas law on collateral estoppel effect of state jury verdict in order to determine dischargeability of a debt in bankruptcy court was essentially harmless because of same result under both regimes).

to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding. *See id.* Collateral estoppel, also known as issue preclusion, protects against "the expense and vexation attending multiple lawsuits, conserv[es] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent verdicts." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). "In short, 'a losing litigant deserves no rematch after a defeat fairly suffered.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (citing *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991)).

Here, prongs (1) through (3) of the *Sedlack* test are readily established. There can be no doubt that the issue decided by ALJ Kultgen is identical to the core and foundational issue presented by the Complaint here—whether the DBA Policy issued by ACE covers the Duvall Claim. Nor can there be doubt that ALJ Kultgen actually resolved the issue. *See* ALJ Order (**Exh. A**) at 19-22. The issue was necessary to the ALJ's rulings because she assigned responsibility for payment of benefits to TMMG and Mi-Tech, jointly and severally, based on her finding that Mi-Tech and TMMG had no insurers to hold responsible for same. *See id.* at 22-23.

As to prong (4) of the test, the ALJ's ruling is final for collateral estoppel purposes. Indeed, many such ALJ rulings have been given preclusive effect by courts, even in the absence of having been reviewed through the agency review process. *See e.g., Anders v. Ormet Corp.*, 874 F. Supp. 738, 740 (M.D. La. 1994) (giving preclusive effect to ALJ's decision that a claimant under the LHWCA was not a seaman); *Cannon v. United States*, No. 15-cv-2582, 2109 WL 5550065, *5 (S.D. Ca. Oct. 28, 2019) (giving preclusive effect to ALJ's ruling of failure to prove he suffered an injury on the date claimed, such that claimant could not relitigate the same issue in later third-party negligence action). Further, collateral estoppel applies even to a decision that is pending

appeal. *Unicol USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1347-48 & n.5 (Fed. Cir. 2022) ("We have affirmed the application of issue preclusion even when the preclusive judgment was pending appeal.") (citing *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1380-81 (Fed. Cir. 1999)); 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 4433, at 66 (3d ed. 2017) ("[I]t is ... held in federal courts that the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided."); *Restatement (Second) of Judgments* § 13, cmt. f ("[A] judgment otherwise final remains so despite the taking of an appeal[.]"); *cf. Turshen v. Chapman,* 823 F.2d 836, 839 (4th Cir. 1987) (noting the *res judicata* final judgment requirement is met when "a particular adversary proceeding has been finally resolved [such that] the outcome constitutes an appealable final decision."). As this Court has explained, "Any contrary rule would be nonsensical: it would allow litigants a proverbial second bite at the apple while their first, failed bite is being adjudicated in a higher [or different] court. Rather than illustrate an exception to res judicata, Plaintiff's case provides a textbook example of when the doctrine must apply to avoid further wasting judicial resources." *Perry v. LaHood*, No. 1:09-cv-62; 2009 WL 135470, *6 n.3 (E.D. Va. May 12, 2009).

Finally, the fifth and final prong of the *Sedlack* test for collateral estoppel is satisfied here. TMMG had a full and fair opportunity to litigate the matter before the DOL. This prong examines the prior proceedings to assess if they were "fundamentally poor, cursory, or unfair." *B & B Hardware*, 575 U.S. at 158; *Montana*, 440 U.S. at 164, n.11 ("Redetermination of issues [and no preclusion] is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."). An example of when an underlying agency proceeding might provide concerns enough to justify relitigation is if the agency prevented the litigant from introducing material evidence. *B & B Hardware*, 575 U.S. at 159. Typically, agency procedures

differ from district court procedures, but procedural differences are no reason to doubt the fairness of an agency's proceeding. *Id.* at 158-59. Indeed, the refusal to apply issue preclusion based on a lack of fairness in the underlying proceedings requires a "'compelling showing of unfairness'" and such cases are "rare." *Id.* at 159 (quoting Restatement (Second) of Judgments § 28, Comments *g* and *j*, at 283-284).

The ALJ's Order reveals that the proceedings were judicial in nature and otherwise fair for issue preclusion purposes. The proceeding "had all the trappings of a judicial proceeding." *Tice v. Bristol-Myers Squibb Co.*, 515 F. Supp. 2d 580, 592 (W.D. Pa. 2007), *aff'd* 325 Fed. Appx. 114 (3rd Cir. 2009). Although it appears the ALJ ruled on the papers, prior to ruling she issued the parties a briefing schedule and made her ruling only after the parties filed their closing briefs. ALJ Order, at 4. She made findings of fact and conclusions of law based on record evidence, citing to same. She wrote a reasoned opinion covering numerous issues with citations to relevant law. TMMG was given a full opportunity to litigate in the proceedings before the ALJ, satisfying prong (5) of the collateral estoppel test.

In its Complaint, TMMG alleges its defense counsel in the proceedings before the ALJ did not loyally and zealously represent TMMG because the lawyer also represented ACE, and TMMG's and ACE's interests differed on the issue of coverage. Though irrelevant to the question of coverage itself, and assuming for purposes here TMMG's allegations are true, the concerns TMMG raises go not to procedural fairness but to impropriety by the parties or lawyers. This is not the kind of unfairness that courts are concerned about when deciding if a litigant should have a chance to relitigate an issue. Moreover, to the extent there is any concern, the extensive review procedures provided by Congress for ALJ decisions relating to DBA benefits will cure this issue. Indeed, TMMG is currently litigating the coverage issue with new counsel before the BRB, and,

should that be unsuccessful, TMMG can appeal to the appropriate district court, then up to the federal court of appeals.  Additionally, three other parties—Mi-Tech, claimant, and the Director of the OWCP—also argued to the ALJ that the DBA Policy applied to Mr. Duvall's work. *See* ALJ Decision and Order (3/15/22) at 8, n. 13, **Exh. E** hereto ("In this case, although Mi-Tech did not secure DBA insurance, Claimant and Mi-Tech assert TMMG did."); Solicitor's Letter Brief (2/23/24), **Exh. F** hereto. All parties had an interest in there being some insurance to pay Mrs. Duvall's DBA benefits.

More importantly, as discussed, TMMG's defense counsel's conduct is irrelevant to the determination of coverage. Resolution of the issue did not turn on the presentation of evidence by, or arguments of, TMMG's counsel. Rather, the ALJ's decision, as is evident from her well-reasoned opinion, turns on an interpretation of contract terms applied to undisputed facts and circumstances about the work performed by decedent. TMMG readily agrees with this point. *See* TMMG's Opp. Mot. Strike (2/26/24), at 5-6, **Exh. G** hereto. ("Nothing included in that exhibit [TMMG affidavit stating attorney misconduct facts and insurer's alleged role in same] makes coverage of this loss by the DBA Policy Chubb issued TMMG more or less likely.").

Finally, to the extent there was "unfairness" in the ALJ proceedings because the conduct of defense counsel affected the ALJ's coverage decision, TMMG has an avenue of relief at the agency. As ACE pointed out in briefing before the BRB, *see* Mot. Strike TMMG's Extra-Record Evidence (2/16/24) at 7-8, **Exh. H** hereto, TMMG can seek a request for modification of the ALJ's award order because of a mistake in fact or a change in condition. TMMG would essentially get a new hearing on coverage. Section 22 of the LHWCA, 33 U.S.C. § 922, authorizes any party to request modification of an award order because of a mistake in fact or a change in condition. If TMMG believes some evidence was not properly presented by, or its import argued by, its prior

lawyer to the ALJ, then it may argue the Order is based on a mistake of fact. On Section 22 relief, an ALJ has authority to review the issue again, in accordance with normal claims procedures. *See* 33 U.S. §§ 922; 919(a). Indeed, the Supreme Court has clarified that review and redetermination by an ALJ under Section 22 is broad, and Section 22 is broadly available "in order to render justice under the act." *O'Keefe v. Aerojet-Gen. Shipyards, Inc.*, 404 U.S. 254, 255-56 (1971) ("There is no limitation [in Section 22 review] to particular factual errors, or to cases involving new evidence or changed circumstances" and this provision "was amended expressly to broaden the grounds on which a deputy commissioner can modify an award[.]") (citation to legislative history omitted). Nor is Section 22 modification foreclosed after appealing to the BRB—a party can notify the BRB of a Section 22 filing and the BRB shall dismiss the appeal without prejudice, pursuant to 20 C.F.R. § 802.301(c). TMMG, however, has decided it does not need this relief because, as TMMG stated in briefing to the BRB, the misconduct allegations relating to its prior defense counsel have no bearing on the question of whether coverage exists under the Policy. TMMG's Opp. Mot. Strike at 5-6, **Exh. G** hereto.

## 2.   <u>The ALJ's Decision on Coverage is Entitled to be Given Preclusive Effect.</u>

It is well established that issue preclusion applies when the same issue before a court was previously decided by an administrative agency. *B & B Hardware*, 575 U.S. at 148 (explaining the principle of issue preclusion was so well-established at common law that where Congress has authorized agencies to resolve disputes, courts may presume Congress intended issue preclusion to apply to agency decisions unless the contrary is evident in the statute) (citing *Astoria*, 501 U.S. at 108). The Supreme Court has had a "longstanding view that when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to

apply res judicata to enforce repose." *Id.* (internal quotations omitted) (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 797-798 (1986)).

Nothing in the DBA, or the LHWCA which the DBA adopts and extends, bars the application of issue preclusion here. Indeed, courts have applied issue preclusion to numerous and various ALJ decisions made in award orders for LHWCA and DBA claimants. This is because "permitting a trial court to redetermine coverage issues decided by an ALJ defeats the purpose of the LHWCA and creates uncertainty for both the employee and employer." *Anders*, 874 F. Supp. a 740 (citing *Fontenot v. AWI, Inc.*, 923 F.2d 1127 (5th Cir. 1991)); *see also Cannon*, 2109 WL 5550065, *5 (finding LHWCA claimant could not relitigate issue of whether injury occurred on the date claimed in later negligence action).

When determining if an agency decision has preclusive effect, courts consider the overall nature of the proceedings at the administrative level and essentially conduct a fairness review of those proceedings. If the proceedings provided the parties a full and fair opportunity to litigate the issues in question, issue preclusion applies if the rules of collateral estoppel are otherwise satisfied. *Allen v. McCurry,* 449 U.S. 90, 95 (1980). This consideration is essentially the same test as prong (5) of the *Sedlack* collateral estoppel test, with some nuances. In *Utah Construction*, the Supreme Court set forth fairness requirements that a court must consider before finding that an administrative agency's decision has preclusive effect on a later-filed action. These "fairness" requirements include determining whether (1) the administrative agency acted in a judicial capacity; (2) the agency resolved disputed issues of fact properly before it; and (3) the parties had an adequate opportunity to litigate. *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422 (1966). The Duvall Claim proceedings satisfy these requirements.

First, as to prongs (1) and (2), there can be no doubt the ALJ acted in a judicial capacity, the question of whether the DBA Policy covered the Duvall Claim was squarely before the ALJ, and that the ALJ resolved the issue in her October 2023 Order. Further to those points, the ALJ had "full power and authority to hear and determine" the question of coverage because the question was decided "in respect of [a DBA] claim." *See* 33 U.S.C. § 919(a) & (d); *ALJ authority discussion, supra.*

As to the third prong of the *Utah Construction* factors, TMMG had an adequate opportunity to litigate the question of coverage. It is, in fact, still doing so at the BRB. This prong considers fairness much as the fifth prong of the collateral estoppel test does. As such, the discussion above on this prong applies. In short, TMMG has no basis to argue the DOL proceedings were unfair for purposes of issue preclusion; TMMG's remedy for any negative or unfair effect its prior defense counsel may have had on the proceedings lie with the agency itself.

## C. COUNT TWO SHOULD ADDITIONALLY BE DISMISSED FOR FAILURE TO STATE A CLAIM BECAUSE UNDER VIRGINIA LAW THERE IS NO STANDALONE CLAIM FOR BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING.

Apart from the considerations argued above as to why the entire Complaint must be dismissed, there are independent grounds under Virginia law to find Count Two fails to state a claim. Count Two asserts a breach of the "implied duty of good faith and fair dealing." Compl. at pp. 16-18. In it, TMMG contends that ACE breached the implied duty by, among other things, failing to properly investigate the Duvall Claim or TMMG's coverage for it, denying coverage after four and half years while leaving TMMG to appeal the coverage decision of the ALJ (Compl. ¶ 91) and failing to provide a proper defense to TMMG due largely to providing a defense lawyer who violated the ethical duties of zealousness, loyalty and competency (Compl. ¶ 92). TMMG

characterizes these failings in Count Two as "bad faith handling [of] TMMG's claim in connection with the Duvall Claim." Compl. ¶ 96.

"Virginia law recognizes an implied covenant of good faith and fair dealing in certain contracts." *Tedders v. Bank of Am., N.A.*, 92 Va. Cir. 33, 37 (Va. Cir. Ct. 2015) (citing *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009)). But an alleged breach of that covenant "'does not amount to an independent tort;'" instead, it "'gives rise only to a cause of action for breach of contract.'" *Smith v. Flagstar Bank, F.S.B.*, No. 3:14-cv-741, 2015 WL 1221270, *6 (E.D. Va. Mar. 17, 2015) (quoting *Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*, 251 Va. 28, 33, 466 S.E.2d 382, 385 (1996)). In other words, "[a] claim for the breach of that covenant is a claim for breach of contract." *Rogers v. Deane*, 992 F. Supp. 2d 621, 633 (E.D. Va. 2014) (citing *Eplus Tech. Inc. v. Nat'l RR Passenger Corp.*, 407 F. Supp. 2d 758, 762 (E.D. Va. 2005)). "Where there is a claim for breach of contract, the inclusion of a claim for breach of the implied covenant of good faith and fair dealing as a separate claim is duplicative of the breach of contract claim; it does not provide an independent cause of action." *Id.*

Accordingly, TMMG "'must bring [a breach of the implied covenant] claim as part of a count for breach of contract,'" rather than as an independent claim. *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 294 n.8 (4th Cir. 2021) (quoting *Morris v. Wilmington Sav. Fund. Soc'y*, 360 F. Supp. 3d 363, 369 (W.D. Va. 2018)); *see also AB Staffing Sols., LLC v. Asefi Capital, Inc.*, No. 3:22-cv-32, 2022 WL 16555707, at *10, n. 4 (E.D. Va. Oct. 31, 2022) ("Because a claim for breach of the implied covenant of good faith and fair dealing does not furnish an independent cause of action, a party cannot raise it as a separate count in a complaint."); *Bagley v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 11880, *17-20 (E.D. Va. Jan. 29, 2013) (finding same and dismissing

count); *Harrison v. US Bank Nat'l Ass'n*, No. 3:12-cv-224, 2012 WL 2366163, * 2-3 (E.D. Va. June 20, 2012) (dismissing such claim duplicative of a separate breach of contract claim).

TMMG attempts to state the "facts" to support Count Two differently from those stated to support a breach of contract in Count One. Count One asserts repeatedly, and more vaguely, that "[t]he manner in which [ACE] failed to effectively provide a defense to TMMG against the Duvall claim (while maintaining a misleading veneer of such a defense actually being provided to TMMG)" had various results: it "misled TMMG into falsely believing, to its detriment, that TMMG's interests … were adequately being represented" (Compl. ¶ 83); "hindered and prevented TMMG from adequately being able to defend TMMG's own interests in connection with the Duvall Claim (Compl. ¶ 84); "resulted in the counsel [ACE] ostensibly assigned to defend TMMG's interests actually acting contrary to those same interests and in favor of [ACE's] own diametrically opposed interests" (Compl. ¶ 85); and prevented TMMG from "obtain[ing] a more favorable result before the [ALJ] and/or [being] able to negotiate a much more favorable compromise resolution" (Compl. ¶ 86).[7] Count Two alleges a few additional, ostensibly different facts: that ACE did not properly investigate the claim or if there was coverage for it, and that it waited too long to investigate coverage resulting in "abruptly denying coverage" when TMMG had limited time to appeal the ALJ's 2023 coverage decision. Compl. ¶ 96. The remaining allegations to support Count Two are in essence those stated in Count One—failing to provide a proper defense. *Compare* Compl. ¶¶ 83-86 *with* Compl. ¶ 92. The gist of the theory to support Count Two is that ACE put its interests ahead of TMMG's in its handling of the claim. The relief sought for Count Two is identical to that sought in Count One. Compl. ¶¶ 87, 96. If there is no coverage under the DBA Policy, however, these allegations are irrelevant.

---

[7] While scurrilous, these actions may support a claim for legal malpractice but they are irrelevant to determining whether coverage for the Duvall Claim exists under the DBA Policy.

Because the duty of good faith and fair dealing exists only under the contract, to the extent the allegations in Count Two state a breach of the duty, they cannot support a standalone claim. The Fourth Circuit has twice interpreted Virginia decisions to hold that in a Virginia insurance relationship, liability for bad faith conduct is a matter of statutory law and the common law of contracts rather than of tort law. *Bettius & Sanderson, P.C. v. National Union Fire Insurance Co.*, 839 F.2d 1009, 1016 (4th Cir. 1988) (involving a third-party insurance controversy); *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.,* 798 F.2d 669, 676 (4th Cir. 1986) (involving a first-party insurance controversy). Thus, the conduct alleged by TMMG does not constitute an independent tort under Virginia common law. *See, e.g., Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460 (E.D. Va. 2013); *Jones v. Fulton Bank, N.A.*, No. 3:13-CV-126, 2013 WL 3788428, *7 (E.D. Va. July 18, 2013), *aff'd*, 565 Fed. App'x. 251 (2-14); *Harrison*, 2012 WL 2366163, *2 ("Virginia [] does not recognize an implied covenant of good faith and fair dealing in contracts outside of those governed by the Uniform Commercial Code."); *Frank Brunckhorst Co., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008) ("Under Virginia law, every contract contains an implied covenant of good faith and fair dealing; however, a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action.").

Virginia law does impose on all insurers an obligation to act in good faith with respect to various insurance practices, under Va. Code § 28.2-510. These obligations, however, are enforced by Virginia's State Corporation Commission, which can investigate insurers and impose penalties; the statute expressly disclaims any private cause of action. *See* Va. Code § 28.2-510(B); *see also A & E Supply Co.*, 798 F.2d at 674, 675 n.7; *Saint John's African Methodist Episcopal Church v Guideone Specialty Mut. Ins. Co.*, 902 F. Supp. 2d 783 (E.D. Va. 2012).

Further, Virginia law provides for a remedy of costs and attorney's fees when an insurer "not acting in good faith" denies coverage or failed to pay the insured. Va. Code § 38.2-209(A). However, proof of "bad faith" under this statute is a source of additional *recovery* in a breach of contract action against the insurer only *after* entry of judgment; the statute does not create a separate cause of action for bad faith. *Capitol Prop. Mgmt. Corp. v. Nationwide Prop. And Cas. Ins. Co.,* 261 F. Supp. 3d 680, 693-94 (E.D. Va. 2017), *aff'd,* 757 Fed. App'x 229 (4th Cir. 2018) ("[Section] 38.2–209 does not create a separate and independent cause of action for bad faith."); *Tiger Fibers, LLC v. Aspen Specialty Ins. C*o., 594 F. Supp. 2d 630, 654 (E.D. Va. 2009) ("Section 38.2–209 does not create an independent cause of action .... [A] party may seek relief under Section 38.2–209 only after a judgment is entered against the insurer.") (internal citations omitted); *Selective Ins. Co. of the Southeast v. Williamsburg Christian Academy*, 458 F. Supp. 3d 409, 417-18 (E.D. Va. 2020) (same); *Cradle v. Monumental Life Ins. Co*., 354 F. Supp. 2d 632, 635 (E.D. Va. 2005) ("Plaintiff may only recover against Defendant pursuant to Va. Code § 38.2–209 after a judgment has been entered against Defendant."); *see also US Airways, Inc. v. Commonwealth Ins. Co.,* 64 Va. Cir. 408, 419 (Arlington Cty. Cir. Ct. 2004) ("The statute does not create a separate cause of action .... Therefore, [the plaintiff] may rely on § 38.2-209 for recovery of costs and fees, but it cannot . . . claim a wholly separate cause of action for bad faith under the policy.") (internal citation omitted).

Because TMMG's Complaint seeks "reasonable attorneys fees and costs expended in bringing and prosecuting its bad-faith claim against [ACE]," *see* Compl., Pr. Relief, and there is no fee shifting provision in the DBA Policy, *see generally* Policy (Exh.1 to Compl.), Va. Code § 38.2-209 must be the source of the remedy TMMG seeks for fees and costs. However, as noted, the bad faith allegations do not amount to a separate cause of action. Indeed, bad faith allegations

can only be considered—by a judge, not a jury—upon a condition precedent, which is *coverage under the policy. Reisen v. Aetna Life and Casualty Co.*, 225 Va. 327, 335, 203 S.E.2d 529, 533 (1983) ("[T]he existence of the [good faith by an insurer handling a claim] duty wholly depended upon a condition precedent, that is, coverage under the policy.")

Count Two further fails to state a claim because its allegations essentially all relate to aspects of alleged bad faith handling. *See* Compl. ¶¶ 91, 92. These allegations, however, cannot state a claim unless and until coverage is established. *See, e.g.,* DBA Policy, at 2 Part One, C ("We have no duty to defend a claim, proceeding, or suit that is not covered by this Insurance."). As alleged, then, with the collateral estoppel bar preventing relitigation of the ALJ's finding of no coverage, the defense provided by ACE was an extra-contractual duty and cannot form the basis of an independent breach of contract action.

Finally, should the Court allow Count Two to proceed separately, the jury demand as to Count Two must be struck. *See* Va. Code § 38.2-209(A) (stating insured may recover from insurer costs and fees "as the court may award" and such fees may only be awarded if "the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy."); *Saint John's African Methodist Episcopal Church*, 902 F. Supp. 2d at 786-87 ("Once such a judgment [of liability under the insurance contract] is entered, the determination of whether a plaintiff has the right to recover attorneys' fees and costs under § 38.2–209 is a matter for the court, not the jury.") (collecting cases); Compl. at 18 (demanding a trial by jury "on all issues").

## V.    CONCLUSION

TMMG's Complaint is foreclosed in at least two ways.  By filing its coverage action (and bad faith claim) in state court, TMMG seeks to upend the Congressional review process for

Defense Base Act benefits decisions. The Complaint must fail because no relief can be provided under Virginia law, due to federal preemption. Any order issued granting TMMG the relief it seeks would be *void ab initio* under the power to render doctrine. The case for federal preemption is particularly strong where, as here, the question has been decided in a federal agency and the state law action appears to be a case of forum shopping for a better result.

Secondly, even if the relief TMMG seeks were available under state law, TMMG cannot avoid the collateral estoppel bar for the coverage issue. ALJ Kultgen's Order of October 13, 2023, found the DBA Policy issued by ACE to TMMG does not cover the DBA death benefits claim made by Kimberly Duvall. The Court should therefore dismiss the Complaint for failure to state a claim--the claims are collaterally estopped because the coverage question is barred from relitigation and the proof of coverage is a condition precedent to all other claims for relief in the Complaint. Additionally, Count Two, for bad faith denial of insurance benefits, fails to state a claim because Virginia law does not recognize this claim as a separate cause of action apart from a breach of contract action.

**ACE AMERICAN INSURANCE COMPANY,**

By _____ /s/ Marissa M. Henderson_____
Of Counsel

David N. Ventker (VSB No. 29983)
Marissa M. Henderson (VSB No. 44156)
Ventker Henderson Stancliff, PLLC
256 W. Freemason St.
Norfolk, VA 23510
Tel:    (757) 625-1192
Fax:    (757) 625-1475
dventker@ventkerlaw.com
mhenderson@ventkerlaw.com

*Counsel for Defendant*

30