**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**
**No. 2:25-cv-54- RAJ-DEM**

**THE MCHENRY MANAGEMENT GROUP, INC.,**

**Plaintiff,**

**v.**

**ACE AMERICAN INSURANCE COMPANY D/B/A CHUBB INSURANCE COMPANY,**

**Defendant.**

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant, ACE American Insurance Company ("ACE")[1], states the following as its reply in support of its motion to dismiss (Doc. 5) the Complaint filed by The McHenry Management Group, Inc. ("TMMG").

## I. INTRODUCTION

The question of whether the ACE insurance policy issued to TMMG for Defense Base Act claims (the "ACE Policy" or "DBA Policy") covers TMMG's liability for lifetime death benefits to widow Kimberly Duvall (the "Duvall Claim") is no longer before this Court. Although the Complaint does in fact seek coverage and indemnity for the Duvall Claim, s*ee* Compl., Count One ("Breach of [ACE's] Insurance Contract") at ¶¶ 79, 80 ("79. [ACE] denied TMMG coverage for the Duvall Claim, in violation of the terms of the Chubb Policy, thereby breaching [ACE's]

[1] Defendant, ACE American Insurance Company, does not use the fictitious name identified in the case caption of the Complaint, although "Chubb" (not "Chubb Insurance Company") is a trade name the defendant and other related entities use. For our purposes on briefing, we reference the defendant, ACE American Insurance Company, by the short form name of "ACE."

contractual obligation to TMMG under the [ACE] Policy.") ("80. [ACE] failed to indemnify TMMG under the [ACE] Policy."), TMMG's opposition to the motion to dismiss essentially waives this claim by failing to oppose ACE's arguments seeking dismissal of the coverage claim. Rather, TMMG's opposition brief argues only that TMMG has stated a claim for ACE's alleged violation of the *"duty to defend." See, e.g.*, TMMG Brief (Doc. 13) at 3 (setting forth the "issue" as being whether ACE violated the duty to defend when defense counsel it hired for TMMG argued against coverage); 5 ("The issue here is whether ACE is liable for breach of its duty to defend."). TMMG has made no response whatsoever to ACE's extensive arguments as to why the question of *coverage* cannot be advanced in this action, except perhaps to point out that collateral estoppel may not apply due to the ethical violations of its ACE-appointed defense counsel. On the larger, dispositive questions of whether the issue is altogether preempted under principles of federalism and unable to be decided under Virginia law under the power to render doctrine, TMMG's opposition brief is silent. That silence can only be read as acquiescence. Under well-established principles, as discussed below, by failing to respond to ACE's arguments in favor of dismissal of the coverage claim, TMMG has waived or abandoned any arguments that it has stated a claim for coverage and indemnity under the ACE Policy, and the Court should dismiss those parts of the Complaint that attempt to set forth such a claim.

TMMG has allowed its Complaint to diminish to one that, it asserts, states two breaches of contract—a breach of the duty to defend (the remaining part of Count One after dropping coverage) and a breach of the duty of good faith and fair dealing (Count Two). TMMG's position is untenable as to both counts. First, Virginia law does not recognize a cause of action for breach of the duty to defend w*hen there is no coverage under the policy*. Indeed, to do so would be to impose a requirement that does not exist under the DBA Policy, which states: "We [the insurer] have no

duty to defend a claim, proceeding, or suit that is not covered by this Insurance." DBA Policy at 2 Part One, C (Doc. 1-2 at 25). There is no coverage under the DBA Policy. That issue has been decided in proceedings before the appropriate federal agency that determined who must pay Mrs. Duvall her lifetime widow's benefits under the DBA. TMMG cannot challenge the finding on coverage here, *see generally,* ACE Brief (Doc. 6), and it has abandoned its attempt to do so.

The source of this alleged duty to defend in the absence of coverage is a bit unclear from TMMG's brief. First, TMMG asserts the duty arises from ACE's reservation of rights letter in which it stated it would defend TMMG while reserving the right to deny coverage. *See* TMMG Brief (Doc. 13) at 5; ROR Letter (Doc. 1-2 at 67-68). Next, TMMG cites a treatise and an inapposite case from Arizona discussed in the treatise for the existence of a cause of action for breach of the duty to defend when voluntarily undertaken. TMMG cannot point to any Virginia law that recognizes such a cause of action. Whatever the source of duty for TMMG's claim for breach of the duty to defend, it is not the insurance contract. Yet TMMG's remedies lie solely in contract; torts for bad faith or other improper claims handling acts—which is what TMMG is alleging—are not actionable in Virginia. *See* ACE Brief (Doc. 6) at 24-29.

The second "claim" TMMG seeks to advance is in Count Two of the Complaint, a claim for breach of the implied duty of good faith and fair dealing. However, TMMG is confused. There is no separate action for such a breach under Virginia law. It is part and parcel of a claim for breach of an insurance contract, not a separate cause of action. As discussed more fully below, the breach of the duty of good faith and fair dealing can only be stated when there is coverage under the policy; likewise, the attorney's fees statutory remedy for "bad faith" can only be recovered in actions in which coverage is sought and found to exist. As such, Count Two of the Complaint must fall because there is no prerequisite coverage under the ACE Policy.

## II. DISCUSSION

### A. TMMG has Waived its Coverage and Indemnity Claim and to the Extent the Complaint Makes such Claim, it Should be Dismissed with Prejudice.

TMMG's brief opposing the motion to dismiss fails to address ACE's numerous arguments as to why TMMG cannot now and in this forum make a claim for coverage and indemnity under the ACE Policy.[2] As such, the Court should consider this claim abandoned and/or any argument in opposition waived. *See Dreibelbis v. Scholton*, 274 Fed. Appx. 183, 185 (3d Cir. 2008) (affirming district court's refusal to consider, on motion for reconsideration after court granted motion to dismiss, plaintiff's argument that had been waived in the prior briefing by "fail[ing] to contest defendants' . . . argument, despite ample opportunity to do so."); *Shoffner v. Wenerowicz*, No. 15-00392, 2015 WL 4199075, *5 (E.D. Pa. July 13, 2015) (dismissing plaintiffs' Fourth Amendment claim where the defendants moved to dismiss that claim under Rule 12(b)(6) and the plaintiffs never addressed the argument in their opposition brief and instead argued they had stated a claim for another claim in the complaint). Indeed this situation is exactly like that in *Shoffner*:

> Defendants move to dismiss Plaintiffs' Fourth Amendment claim [stating grounds]. Plaintiffs never address this argument in their opposition brief. Indeed, Plaintiffs' opposition only asserts that the complaint "establishes all of the elements of an Eighth Amendment claim [.]" The Court therefore considers Plaintiffs' Fourth Amendment claim abandoned and dismisses it with prejudice.

*Shoffner*, 2015 WL 4199075, * 5 (citations omitted) (noting also that the defendants' arguments on the Fourth Amendment appeared to be correct); *Markert v. PNC Fin. Serv. Grp.*, 828 F. Supp.

---

[2] TMMG does make some arguments regarding federalism/the power to render doctrine and collateral estoppel, but its arguments are largely irrelevant because ACE never argued these doctrines applied to or barred this novel "duty to defend" claim brought by TMMG. One portion of TMMG's argument, however, merits a response because it could apply to ACE's collateral estoppel argument regarding coverage. TMMG argues that because its interests were not fairly represented before the ALJ due its lawyer also representing ACE, prong five of the collateral estoppel test (that the party had a full and fair opportunity to litigate the issue) is not satisfied. TMMG Brief at 7-8. However, as pointed out in ACE's Brief, prong five is more concerned with a review of the structural and procedural fairness of the prior proceedings and not with attorney malfeasance. ACE Brief (Doc. 6) at 19-21. There is no authority of which ACE is aware, and TMMG cites to none, that has declined to apply a collateral estoppel bar for facts similar to those alleged by TMMG.

2d 765, 772 (E.D. Pa. 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue."); *Strauss v. Angie's List, Inc.*, No. 2:17-cv-2560, 2019 U.S. Dist. LEXIS 15425 *7, 8, 2019 WL 399910, *7 (D. Kan. Jan. 31, 2019) (finding that plaintiff that failed to respond to defense of laches asserted by defendant in support of Rule 12(b)(6) motion to dismiss had waived the issue, and, in any event, the new arguments plaintiff raised after dismissal were not well-taken and the ruling was correct); *Quillen v. Astra*, 2011 U.S. Dist LEXIS 252, *16, 2011 WL 9004 (E.D. Tenn. Jan. 3, 2011) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed [argumentation] are deemed waived"); *cf. GPNE Corp. v. Apple Inc.*, 108 F. Supp. 3d 839, 848 (N.D. Cal. 2015) (failure to raise arguments in briefing constitutes a waiver of those arguments).

In any event, the Court need not rely simply on a waiver and/or abandonment doctrine to find that TMMG cannot state a claim for coverage under the ACE Policy. For the numerous arguments advanced by ACE, this Court (and the original state court where the action was filed) is not the proper forum to relitigate coverage. This Court, sitting in diversity, must defer to the federal agency rulings and proceedings and, even if it could consider the coverage question, collateral estoppel would apply to bar re-litigation of an issue previously decided.

**B. TMMG Cannot State a Claim for Breach of the Duty Defend under Count One Because the Plain Language of the Insurance Policy Imposes No Duty to Defend When There is No Coverage.**

Under Virginia law, terms in an insurance contract must be read in accordance with their plain and ordinary meaning. *Osborne v. National Union Fire Ins. Co.*, 251 Va. 53, 56, 465 S.E.2d 835, 837 (1996) ("When the terms of an insurance policy are clear and unambiguous, we give the words their ordinary meaning and enforce the policy as written."); *Seabulk Offshore, Ltd. v.*

*American Home Assur. Co.*, 377 F.3d 408, 419 (4th Cir. 2004); *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d 422, 434 (E.D. Va. 2000) (same). As such, this clear and unambiguous ACE Policy language controls:

> We [the insurer] have *no duty to defend* a claim, proceeding, or suit that is not covered by this Insurance.

DBA Policy at 2 Part One, C (Doc. 1-2 at 25) (emphasis added). For our purposes, the Court must accept that the ACE Policy does not cover the Duvall Claim, as a federal agency, adjudicating in an area on which it has authority to act, has determined there is no coverage. For the reasons stated in ACE's prior briefing, TMMG cannot seek a ruling here that the ACE Policy covers the Duvall Claim.

Since ACE's Policy with TMMG does not cover the Duvall Claim, under the clear and plain language of the Policy, ACE has no duty to defend TMMG. As such, TMMG cannot state a claim against ACE for breach of the duty to defend.

What TMMG glosses over is that ACE did, in fact, provide a full and complete defense to TMMG right up until the Administrative Law Judge ("ALJ") ruled that there was no coverage. TMMG's actual complaint is not that a defense was not provided, it just objects to the quality of the defense. Even if TMMG could state a claim against ACE for improperly providing a defense, it is unclear what damages TMMG could assert. The damages sought in *both* counts of the Complaint appear to seek recovery if coverage is found—the amount of benefits awarded to Mrs. Duvall in her DBA claim, plus attorney fees and costs. *Compare* Compl. ¶ 61 (alleging the ALJ found TMMG liable for Mrs. Duvall's award of lifetime weekly benefits which are estimated at $1,476,186.40, plus any attorneys' fees and costs awarded Mrs. Duvall's counsel.") *with* Compl., Count One at ¶ 87; Count Two at ¶ 96 ("87. As a direct result of [ACE's] breaches of its contractual obligations to TMMG under the [ACE] Policy, TMMG has been damaged in an amount to be

proved at trial, but which is presently estimated to be no less than $2,100,000.00)"; ("96. As a direct result of [ACE's] bad faith handling TMMG's claim in connection with the Duvall Claim and [ACE's] breaches of its implied duty of good faith and fair dealing with TMMG, TMMG has been damaged in an amount to be proved at trial, but which presently is estimated to be no less than $2,100,000.00."). Nowhere, however, does TMMG actually argue that with better or different counsel, it would not have been found liable under the DBA – in fact, it makes no such argument in this proceeding or in its pending appeal to the decision of the Administrative Law Judge. Yet without establishing coverage, which is no longer at issue here, ACE would have no duty to cover TMMG's liability for the Duvall Claim. So TMMG's damages claims for "no less than $2,100,000.00" are not recoverable.

The only damages allegation in the Complaint that appears to flow from the alleged improper and ineffective defense provided by counsel provided by ACE states: "TMMG would have been able to obtain a more favorable result before the [ALJ] and/or been able to negotiate a much more favorable compromise resolution of the Duvall Claim." Compl. ¶ 86. In other words, maybe, with a different lawyer, TMMG could have persuaded Mrs. Duvall's counsel to accept a favorable settlement. Such damages arise not from the Policy obligations, but from the alleged malpractice of defense counsel. And, as argued herein, Virginia law does not allow for extra-contractual damages or remedies that would expand the scope of an insurance policy. The damages TMMG seeks for ACE allegedly providing an improper defense relate to getting a better result in the underlying action—the type of damages that can be awarded in malpractice actions against counsel, not in breach of insurance contract actions. This point reveals that TMMG's action against ACE is misplaced as its grievances and remedies are best suited for a malpractice action against counsel rather than one against its insurer.

**C. Virginia Law does not Recognize a Claim for Breach of the Duty to Defend in the Absence of Coverage, and TMMG's Cited Authority is Inapposite.**

TMMG tries to get around the absence of coverage and the absence of a duty to defend under the Policy by arguing that ACE's duty arose apart from the Policy—from the fact that ACE "agreed in writing to defend TMMG," "an agreement that is valid and enforceable." TMMG Brief (Doc. 13) at 5; 7 ("ACE's reservation of rights letter was a free-standing written undertaking to provide a defense."). However, Virginia law is clear that if there is no coverage, the insurer has no duty to defend. *See, e.g., Factory Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 518 F. Supp. 2d 803, 814 (W.D. Va. 2007) ("As a result [of the court's finding that the policies at issue do not cover the claims against the insured] neither [insurer] was under a duty to defend its insured in the underlying litigation.") (applying Virginia law). There is no authority in Virginia that recognizes that a reservation of rights letter from an insurance company, issued prior to a determination of coverage, creates a free-standing duty to defend separate and apart from the policy and which is actionable if the defense is conducted improperly. In fact, the opposite is true—a reservation of rights letter does not admit or create a duty to defend. *RSC Equip. Rental, Inc. v. Cincinnati Ins. Co.*, 54 F. Supp. 3d 480, 484 (W.D. Va. 2014) ("[T]he reservation of rights procedure that is timely pursued does not admit a duty to defend and, in fact, it expressly preserves the right to challenge any obligations under the relevant policy.") (quoting *Mount Vernon Fire Ins. Co. v. Adamson*, No. 3:09–cv–817, 2010 WL 3937336, *6 (E.D. Va. Sept. 15, 2010)) (applying Virginia law). TMMG cannot get around the fact that the duty to defend arises solely under the terms of the insurance contract. *See Morrow Corp.*, 101 F. Supp. 2d at 429–30 ("the duty to defend arises solely under [the insurance] contract").

The only authority TMMG points to for its proposition that it has stated an actionable claim for a breach of the duty to defend is a case from the Arizona Supreme Court and a treatise briefly

discussing this case. The case, *Parsons v. Cont'l Nat'l American Grp.*, 550 P.2d 94, 113 Ariz. 223 (1976), is distinguishable on the law and facts, and in any event, it goes against Virginia insurance law. The relief granted in *Parsons*—a finding of coverage and *extra-contractual* liability for a judgment of *double* the policy limits—was not based on an action for breach of the duty to defend. Rather, the *Parsons* court found that the insurer had waived the right to assert, and was estopped from asserting, any coverage defenses by relying on confidential information from defense counsel to deny coverage. *Id.* at 97, 113 Ariz. at 226 ("Appellants contend that CNA should be estopped to deny coverage and have waived the intentional act exclusion because the company took advantage of the fiduciary relationship between its agent (the attorney) and Michael Smithey. We agree."). The *Parsons* court, in other words, imposed a duty to provide coverage, as a punishment, essentially, for ethical violations of defense counsel and the insurer.

There is no such authority under Virginia law for imposing extra-contractual liability on an insurer or that permits a finding of waiver and estoppel regarding coverage defenses on similar facts. Indeed, Virginia law expressly prohibits waiver and estoppel from extending the scope of liability under an insurance contract. *See Blue Cross and Blue Shield of Virginia v. Wingfield,* 239 Va. 599, 601, 391 S.E.2d 73, 74–75 (1990) ("[T]he coverage of an insurance contract may not be extended by estoppel or implied waiver to include risks not covered by its terms.") (citing *Sharp v. Richmond Life Ins. Co.,* 212 Va. 229, 233, 183 S.E.2d 132, 135 (1971)); *Elec. Motor & Contracting Co., Inc. v. Travelers Indem. Co. of Am.*, 235 F. Supp. 3d 781, 794 (E.D. Va. 2017) ("Electric Motor's estoppel argument also fails because, under Virginia law, the doctrine of estoppel cannot be used to enlarge the coverage of an insurance policy."); *Morrow Corp.*, 101 F. Supp. 2d at 429 (rejecting argument that insurer was estopped from denying coverage based on

term not explained to them because "Virginia law . . . prohibits the doctrines of waiver and estoppel from being used to enlarge the coverage of an insurance policy.").

Here, as alleged in the Complaint, ACE did not deny coverage to TMMG until a third-party adjudicator having subject matter jurisdiction over the issue, the ALJ at the DOL, made a written finding of no coverage. *See* Compl. ¶¶ 57-62. As argued in ACE's opening brief, the ALJ's finding of no coverage relied on an assessment of the DBA Policy language and undisputed facts about the nature of work performed by the deceased and the contracts governing his work. *See* ALJ Kultgen's Order (Doc. 6-1), at 19-21; ACE Brief (Doc. 6) at 5. Only *after* ACE had notice of a binding decision of no coverage from an administrative law judge did ACE deny coverage. Compl. ¶ 57, 62. Moreover, TMMG conceded in briefing before the DOL that the problematic conduct of its counsel, which it raised in an affidavit on appeal to the Benefits Review Board ("BRB"), does not impact the analysis of whether the ACE Policy covered the Duvall Claim. *See* TMMG Brief before BRB (Opp. to Motion to Strike, 2/26/24) (Doc 6-7), at 5-6 (asserting, when forced to defend its affidavit (which stated duplicative facts to those raised in the Complaint here of attorney's conflict of interest and ACE's improper defense) from being struck as improper evidence outside the ALJ's record to be considered on appeal of the coverage question, "Nothing included in that [affidavit] makes coverage of this loss by the DBA Policy [ACE] issued TMMG more or less likely.") Although the Complaint does allege defense counsel argued against coverage to the ALJ, Compl. ¶¶ 42, 45, 53, the Complaint does not allege ACE facts similar to *Parsons* in which ACE acted on confidential information from defense counsel to deny coverage. The denial decision was, instead, first made by the ALJ and only thereafter by ACE. The ALJ's determination is not now in dispute in this proceeding.

Furthermore, the treatise cited by TMMG discusses situations in which an insurer "can be estopped from denying coverage if the defense counsel's wrongdoing served to prejudice the insured." Allan D. Windt, Insurance Claims and Disputes § 4:42 (5th ed. 2007). The section relies largely on the *Parsons* case, as well as citations to cases in a couple of other jurisdictions, not including Virginia. *See id.* The treatise says nothing about a breach of the duty defend as an independently actionable claim, which is the claim TMMG is advancing. In the absence of any authority in Virginia for the points discussed in the treatise, the Court should not recognize an extension, essentially, of Virginia law based on this treatise.

*Parsons*, and any language in the treatise cited by TMMG that relies largely on *Parsons*, therefore provides no support whatsoever for the principle that Virginia law recognizes that an alleged breach of an insurer's duty to defend, undertaken under a reservation of rights, is independently actionable despite there being no coverage. *Parsons* is distinguishable on both the facts and the law, and it goes against Virginia law by expanding the scope of an insurance policy beyond its written terms via waiver and estoppel.

**D. Count Two Must Fail Because the Duty of Good Faith and Fair Dealing, and the Statutory Remedy for Attorneys' Fees for "Bad Faith," as Asserted in Count Two, Both Require Coverage to Exist.**

Count Two of TMMG's Complaint is titled "[ACE's] Breach of its Implied Duty of Good Faith and Fair Dealing Under its Insurance Contract." Compl. at 16. However, Virginia law is clear that a prerequisite to state a breach of the duty and good faith and fair dealing is that the policy in question actually covers the loss. *Reisen v. Aetna Life and Cas. Co.*, 203 S.E.2d 529, 533, 225 Va. 327, 335 (1983) ("[T]he existence of the duty [of good faith by an insurer handing a claim] wholly depended upon a condition precedent, that is, *coverage under the policy*.") (emphasis added). Yet it is established for our purposes here that the ACE Policy does not, in fact, cover the loss at issue.

Without coverage, there is no duty of good faith and fair dealing, and TMMG cannot state a claim for breach of this duty.

There is another aspect to Count Two to address—a request for attorney's fees and costs "expended in bringing and prosecuting its bad-faith claim against [ACE]." Compl. at 18 (Prayer for Relief). However, Virginia law is different from the law of many other states that allow bad faith *tort* actions against insurers. The terms "bad faith" and violation of the duty of good faith and fair dealing can be confusing in Virginia because, although bad faith is not actionable in tort, the Virginia Code allows a limited recovery of fees and costs in instances of "bad faith." *See* Va. Code § 38.2-209(A). However, this statute only applies when an insured *is seeking coverage or payment* under the policy, and attorney's fees can only be awarded *if there is coverage under the insurance policy*. The language of the statute could not be any clearer on these points:

> [I]n any civil case in which an insured individual sues his insurer *to determine what coverage, if any, exists under his present policy* . . . or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded *unless the court determines that the insurer*, not acting in good faith, *has either denied coverage or failed or refused to make payment to the insured under the policy.*

Va. Code § 38.2-209(A) (emphasis added); *see also* ACE Brief (Doc. 6) at 28-29. As such, there cannot be recovery for attorney's fees and costs for "bad faith" unless a party is suing to determine coverage and proves the insurer denied coverage in bad faith. TMMG is not suing for coverage (anymore) so this "bad faith" statutory remedy is not recoverable. All aspects of Count Two, therefore, must be dismissed for failure to state a claim.

TMMG cannot state a claim for a breach of the duty of good faith and fair dealing (Count Two), nor can it seek statutory attorney's fees and costs for "bad faith." In other words, even if the alleged breach of the duty to defend as stated in the Complaint were somehow actionable, TMMG

cannot state a claim for breach of the duty of good faith and fair dealing or for statutory fees and costs because both require coverage under the insurance policy in question. Having given up on its coverage claims, Count Two of the Complaint must also be dismissed.

## III. CONCLUSION

TMMG raises a novel theory under Virginia insurance law—that an insurer's duty to defend is independently actionable, if undertaken and performed improperly, even when the insurance policy does not cover the loss. Since the ACE Policy here does not cover the loss and does not impose a duty to defend, TMMG argues the duty was created when ACE undertook to defend TMMG under a reservation of rights. Virginia law rejects this argument; the insurance contract governs the rights and remedies between parties. Further, the Arizona case cited by TMMG is distinguishable and cannot support TMMG's theory. TMMG is essentially seeking an extra-contractual remedy against ACE for improper claims handling—one which is untenable under Virginia law because there is no coverage under the Policy and remedies against an insurer lie in contract, not in tort. The same is true for TMMG's Count Two, breach of the implied duty of good faith and fair dealing—coverage under the insurance policy is a requisite for the claim and for the statutory remedy of fees and costs.

Neither Count One nor Count Two can be maintained in the absence of coverage under the ACE Policy. TMMG's entire Complaint must fail under Rule 12(b)(6).

**ACE AMERICAN INSURANCE COMPANY,**

By: /s/ Marissa M. Henderson
Of Counsel

David N. Ventker (VSB No. 29983)
Marissa M. Henderson (VSB No. 44156)
Ventker Henderson Stancliff, PLLC

256 W. Freemason St.
Norfolk, VA 23510
Tel: (757) 625-1192
Fax: (757) 625-1475
dventker@ventkerlaw.com
mhenderson@ventkerlaw.com

*Counsel for Defendant*